**Wesley James BRADFORD, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–98–00218–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 14, 1999.

Decided June 15, 1999.

Henry Whitley, Attorney at Law, Big Sandy, for appellant.

Angela J. Norton, Asst. Criminal District Attorney, Tim Cone, District Attorney, Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Wesley James Bradford appeals his conviction for delivery of cocaine in an amount of more than one gram but less than four grams. A jury found Bradford guilty. The trial court sentenced Bradford to five years in prison, but suspended imposition of the sentence and placed him on community supervision for five years. Bradford contends the evidence is legally and factually insufficient to support the judgment.

Bradford judicially admitted that all the allegations contained in the indictment were true, but he asserted the defense of entrapment, contending that an agent of the police induced him to commit the offense. Bradford contends the evidence at trial showed the police were investigating a murder and believed he had information that would be helpful. The police, Bradford argues, enlisted the help of his ex-wife, Jael Bradford ("Ms.Bradford"), to entrap him with the purchase of cocaine to use as leverage for his cooperation in the murder investigation. Bradford contends that his love for his ex-wife and her threats to stop letting him visit their children induced him to commit the crime and would have persuaded an average person to do the same. Thus, he contends, the evidence is legally and factually insufficient to support the jury's rejection of his defense of entrapment.

To establish an entrapment defense, an accused must produce evidence that: (1) he was actually induced to commit the offense; and (2) the inducement "was such as to cause an ordinarily law-abiding (sic) person of average resistance nevertheless to commit the offense." *England v. State,* 887 S.W.2d 902, 914 (Tex. Crim.App.1994); *Liggins v. State,* 979 S.W.2d 56, 60 (Tex.App.-Waco 1998, pet. ref'd). Once the accused has presented such evidence, the State must disprove the defense beyond a reasonable doubt. *Hernandez v. State,* 938 S.W.2d 503, 510 (Tex. App.-Waco 1997, pet. ref'd).

A challenge to the legal sufficiency of the evidence supporting a verdict which has implicitly rejected a defense requires us to view the evidence in the light most favorable to the implicit rejection of the defense. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Liggins v. State,* 979 S.W.2d at 61. We resolve any inconsistencies in the evidence in favor of the verdict. *Adelman v. State,* 828 S.W.2d at 423; *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

When presented with a factual insufficiency claim, we view all of the evidence without viewing it in the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We reverse "only if [the implicit rejection of the defense] is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.; Liggins v. State,* 979 S.W.2d at 61. We consider all the evidence in the record related to the contested issue, not just that supporting the verdict. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We give appropriate deference to the jury's decision and do not substitute our judgment for theirs. *Clewis v. State,* 922 S.W.2d at 135.

■ Officer Kay Lynn Newbill testified that during the fall of 1997, Bradford's former roommate was under investigation for murder. Through the course of the investigation, Officer Newbill became aware that Bradford was a drug user and knew how to obtain drugs. Bradford was in jail for a brief time during the investigation of the homicide. Bradford's ex-wife was solicited by Officer Newbill to visit Bradford in jail and obtain information about his knowledge of the homicide. Ms. Bradford was not able to retrieve any useful information. After Bradford got out of jail, Officer Newbill paid Ms. Bradford to purchase drugs from Bradford and videotape the transaction. Officer Newbill testified that one of the reasons she set up the drug purchase was to make a case against Bradford so she could pressure him to cooperate in the homicide investigation. However, Officer Newbill also testified that when she is investigating one crime and she uncovers another crime, she has the obligation to pursue an investigation on the second crime as well.

Bradford testified that Ms. Bradford called him on numerous occasions trying to purchase drugs or to see if he could buy some for her. He contended she called him at least two or three times a week. Bradford stated that he declined the offer several times. He also testified that Ms. Bradford then threatened to withhold visitation rights of their children if he refused to purchase the drugs for her. After a few more attempts to dissuade Ms. Bradford, he agreed to buy the drugs. Bradford testified that Ms. Bradford suggested where the drugs could be purchased.

Bradford declared that, except for the threat of no visitation with his children, he would not have agreed to purchase the drugs. However, he also testified that the first contact he had with Ms. Bradford concerning the drug purchase was when she called him on Christmas day to ask if he wanted to visit their children. Additionally, Bradford stated that he still loved his ex-wife and would have robbed a bank for her if she had asked him.

On cross-examination, Bradford admitted that the reason he could not visit his children was because he had not taken a mandatory parenting program ordered by the court in his final divorce decree. He admitted he received ten dollars for setting up the buy. He stated he did not take any drugs the day of the offense, but he asked Ms. Bradford if she wanted to "shoot up."

Ms. Bradford testified that she called Bradford twice to enlist his aid in getting the drugs. On cross-examination, she stated that she could not remember the number of times she called Bradford, but it was more than once. Ms. Bradford testified that she did not threaten to withhold visitation of their children from Bradford if he refused to help her purchase drugs. Instead, she testified that she would let him keep the children for up to three nights at a time.

Ms. Bradford also testified that Bradford got the drugs from "his person," and that she gave him the money to negotiate the deal. After the transaction, she told him that the drugs were going to be used for resale to others. Furthermore, Ms. Bradford testified that Bradford told her that if she knew anybody with money who wanted cocaine, to come to him and he would get it for them. While driving back to Bradford's house after the transaction, Bradford asked her if she wanted to smoke a marihuana joint or "shoot up" some of the cocaine. After Ms. Bradford dropped Bradford off at his house, he took some of the cocaine for his personal use as payment for putting the deal together.

When the evidence is viewed in the light most favorable to the verdict, the testimony of Officer Newbill and Ms. Bradford provides sufficient evidence from which the jury could conclude that Bradford was not entrapped. Accepting their testimony as true, the evidence does not show that Bradford was actually induced by police conduct to deliver the drugs, and it certainly does not compel a conclusion that the efforts of Officer Newbill and Ms.

Bradford were such that would cause an ordinarily law-abiding person of average resistance to commit the offense. It is not entrapment for police officers to merely provide the opportunity for the defendant to commit the offense. Accordingly, we find the evidence is legally sufficient to support the verdict. *See Liggins v. State,* 979 S.W.2d at 63.

The testimony of Bradford and the cross-examination of Officer Newbill created a fact issue on the entrapment defense, but we must give due deference to the jury's assessment of the credibility of the witnesses and the weight to be given their testimony. *Id.* From our review of the evidence, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d at 134. Thus, we conclude that the evidence is factually sufficient to support the verdict.

For the reasons stated, we affirm the judgment of the trial court.

Concurring opinion by Justice GRANT.

GRANT, Justice, concurring.

I am bothered that one of the purposes for which the officer admittedly set up this charge against Wesley Bradford was to put leverage on him as a potential witness in a homicide case. I would not concur in this case if the undisputed evidence showed that Wesley Bradford's visitation rights with his children had been used to persuade Bradford to purchase the drugs for his ex-wife. However, his ex-wife denied that this had anything to do with her persuading him to purchase the drugs. Because this is a disputed issue of fact, it was resolved against the defendant by the jury.

I respectfully concur.